GREEN ISLAND ICE COMPANY, Respondent, *v.* DANIEL NORTON, Appellant.

*Right of the State of New York to restrict the right to take ice from the Erie canal — nature of its ownership of the canal — right of one having a permit from the State to prevent others from harvesting the ice — enlargement of the right to injunctive relief.*

The State of New York, which is the owner of the bed of the Erie canal and of a strip of land on either side thereof, is the owner of the ice which forms on the canal, and it was competent for the State, through the Legislature (by Laws of 1894, chap. 338, § 23), to restrict the right to take ice from the canal to persons obtaining permission to do so from the Superintendent of Public Works.

A person obtaining such a permit is entitled to an injunction restraining another person, having no such permit, from interfering with his enjoyment of the privilege conferred by the permit, particularly where it appears that such an injunction is necessary to prevent unlawful interference with the licensee's rights, injury to his property, repeated litigation and a resort to physical force.

The growing tendency to enlarge the right to invoke injunctive relief, discussed.

The control which the State of New York exercises over the navigable waters of the State is by right of sovereignty, while the control which the State exercises over the canals and their waters is similar to that which it exercises over its public buildings.

APPEAL by the defendant, Daniel Norton, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 16th day of July, 1904, upon the decision of the court, rendered after a trial before the court without a jury at the Albany Trial Term, perpetually enjoining the defendant from cutting certain ice located in the Mohawk basin.

*Benjamin E. De Groot* and *Thomas F. Powers*, for the appellant.

*Henry J. Speck* and *Frank H. Deal*, for the respondent.

*Julius M. Mayer, Attorney-General*, and *James G. Graham*, for the People of the State of New York.

Judgment unanimously affirmed, with costs, on the opinion of HERRICK, J., at Special Term; CHASE, J., concurred in result.

The following is the opinion of HERRICK, J., handed down at Special Term:

HERRICK, J.:

I have before written an opinion in this case upon the motion for the granting of the preliminary injunction. The facts now appearing upon the trial are substantially the same as represented to me upon that motion; that being so, the same reasons that impelled me to grant the preliminary injunction force me to grant the permanent injunction after trial. The opinion heretofore written, therefore, stands as the opinion of the court after trial of the action upon the merits.

The following is the opinion written upon the motion for a preliminary injunction:

HERRICK, J.:

The defendant objects to the granting of an injunction in this case, because, as he alleges, the plaintiff has an adequate remedy at law, that is, that if the plaintiff is entitled to harvest the field of ice in controversy here, he can obtain compensation in damages from the defendant for any injury that is done to such ice field or interference with his rights therein by the defendant.

The remedy by injunction is one that is constantly growing and expanding, and injunctions are now granted in cases where formerly the courts would not have thought for a moment of so doing. From time immemorial it has been the rule not to issue an injunction where the party praying for it had an adequate remedy at law, but our ideas of what are adequate remedies are changing, and it is gradually coming to be understood that a system of law which will not prevent the doing of a wrong, but only affords redress after the wrong is committed, is not a complete system, and is inadequate for the present needs of society, and that where the rights of the parties are clear the courts should interfere to prevent a violation of such rights; should prevent the doing of the wrong in the

beginning, instead of allowing such rights to be violated and such wrongs to be done, and remitting the party injured to an action for damages as compensation for such wrongs and injuries, at best an uncertain remedy.

Neither will it compel parties whose rights are clear to rely upon the peace officers of the State to protect them in their enjoyment, nor compel them to resort to physical force to protect themselves or their property from wrong or injury.

There is a preventive as well as a remedial justice.

In the case now under consideration I think the rights of the parties are perfectly clear. At the last season for harvesting ice the subject was a matter of litigation between the parties. This season the field has been the scene of force and violence, the sheriff of the county having been compelled to interfere to preserve the peace. All these matters combined make it a proper case for the granting of an injunction to prevent unlawful interference with the plaintiff's rights, injury to its property, repeated litigation and the resort to physical force to protect its rights and property.

In the view that I have taken of this controversy and the rights of the respective parties, the various decisions in this and other States upon the ownership of ice shed very little light upon the questions here involved.

In this case neither of the parties to the action have any right to the ice formed in the canal, by virtue of being adjoining proprietors; they have no riparian rights; they cannot reach the waters of the canal except by going over the strip of land, the fee of which belongs to the State; the only rights they have therein are such as belong to any person in the State, except as permission may be given to them by the public authorities.

If the ice belongs to the owner of the fee where it is formed, then the ice in question here belongs to the State. "Lands appropriated by the canal authorities for the use of the canal, under the statute, are held by the State in fee." (*Sweet* v. *City of Syracuse,* 129 N. Y. 316, 334; *Heacock & Berry* v. *State of New York,* 105 id. 248.)

It seems to me that the control that the State has over the canals and their waters is different from that which it exercises over the navigable waters of the State. The one it exercises by right of

sovereignty, and " among other rights which pertain to sovereignty is that of using, regulating and controlling for special purposes the waters of all navigable rivers or streams, whether fresh or salt, and without regard to the ownership of the soil beneath the water." (*Smith* v. *City of Rochester*, 92 N. Y. 463, 477.)

In the case of its canals, as we have seen, it owns the fee of the land beneath the waters and the strip of land on each side; it owns it as it owns its public buildings, and while that ownership is for the benefit of the people, and one in which the people have an interest, that interest is a collective, not a several interest, not an interest which permits any one of the people by right of first appropriation to take a portion thereof and reduce it to private ownership.

For a great number of years, however, it has been customary for the canal authorities to grant permission to people to take ice from the canals, under restrictions and regulations prescribed by such canal authorities. Under such permits the harvesting of ice has grown to be a great industry; icehouses have been erected at various points along both the Erie and Champlain canals, and hundreds of thousands of dollars have been invested in ice-harvesting plants.

Of the authority of the State to grant these permits I have no doubt. By section 23 of chapter 338 of the Laws of 1894 it is provided that " The superintendent of public works shall: 1. Have the general care and superintendence of the canals. * * * 13. Permit, in his discretion, any person residing in the vicinity of any of the canals to cut, gather and haul away, for the domestic use of such person, ice from such canals whenever the same can be done without causing damage to the banks or other structures thereof."

It must be apparent that to permit any and every one to take ice from the canals at his pleasure might result in serious damage to their banks and even to the prisms, and that for the purpose of guarding and protecting the canals the Superintendent of Public Works may exclude any one therefrom, or he may permit any one, under proper regulations, to go upon them. The permission to one, defining the limits within which he may go, is necessarily an exclusion of all others from those limits.

So, also, I have no doubt of the right of the State to dispose of the ice formed in its canals.

Whatever may be said of the ownership of flowing water, I believe it is almost universally conceded that when water becomes fixed by freezing, that the ice belongs to the owner of the fee of the land over which it is formed. Here, as we have seen, the State is the owner of the fee, not only of the bed of the canal, but of the land on each side.

As owner of the ice it may dispose of it; it is not bound to let it go to waste; neither should it permit a general scramble for its appropriation.

In this case the plaintiff has received permission from the Superintendent of Public Works to harvest the field defined in its written permit. The defendant has received no such permit; he has no right in the basin at all; he has no right to interfere with the plaintiff in the enjoyment of the privilege granted to it by the permit and for which it has paid the public authorities.

Let an injunction issue as asked for.

Injunction issued.